**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

**KERTHATIS LOVELY,**

      **Plaintiff,**

**vs.**                                                    **CASE No.: 4:24-cv-00168-AW-MAF**

**LEON COUNTY SCHOOL BOARD,**

      **Defendant.**

_____/

## AMENDED COMPLAINT

Plaintiff, KERTHATIS LOVELY, hereby sues Defendant, LEON COUNTY

SCHOOL BOARD, and alleges:

## NATURE OF THE ACTION

1.     This is an action brought under the Florida Civil Rights Act, codified

at Chapter 760, Florida Statutes and 29 U.S.C. §203 et seq.

2.     This action involves claims which are, individually, in excess of Fifty

Thousand Dollars ($50,000.00), exclusive of costs and interest.  This case was

removed to this Court by the Defendant.

## THE PARTIES

3.     At all times pertinent hereto, Plaintiff, KERTHATIS LOVELY has

been a resident of the State of Florida and was employed by Defendant. Plaintiff is

a member of a protected class due to his race and he was retaliated against after

reporting Defendant's unlawful employment practices.

4.      At all times pertinent hereto, Defendant, LEON COUNTY SCHOOL

BOARD has been organized and existing under the laws of the State of Florida. At

all times pertinent to this action, Defendant has been an "employer" as that term is

used under the applicable laws identified above. Defendant was Plaintiff's employer

as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action if

any. This action is timely filed thereafter.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff, an African American male, began his employment with

Defendant on or about July 1, 2019, and held the position of Building Maintenance

Supervisor at the time of his wrongful termination on June 30, 2021.

7.      Despite his stellar work performance during his employment with

Defendant, Plaintiff was subjected to disparate treatment, different terms and

conditions of employment, and held to a different standard because of his race, and

because he reported Defendant's unlawful employment activities and was subject

to retaliation thereafter.

8.      The disparate treatment and retaliation came at the hands of specifically but not limited to Principal Sylvia Williams, an African American woman with a lighter complexion that Plaintiff, and Assistant Principal Elizabeth Decardenez, a Hispanic female.

9.      Plaintiff began his employment as a Custodian at Kate Sullivan Elementary School. Assistant Principal Sylvia Meyers was Plaintiff's supervisor. After working with Meyers for a time, Plaintiff decided it was best to find another place in the school system to work, so he was hired as Maintenance Supervisor at Springwood Elementary. Unfortunately, Sylvia Myers now known as Sylvia Williams ("Williams") became the Principal at Springwood Elementary School.

10.     In the Summer 2019, Plaintiff moved a second desk that was in his office outside of his office. Assistant Principal Elizabeth Decardenez yelled at Plaintiff and told him that he did not have the authority to make that kind of decision and next time to consult with her before making that kind of decision.

11.     Shortly thereafter, Plaintiff complained to Williams that his department was short staffed and requested for her to hire at least one more person. Williams claimed Defendant did not have the funds to hire anyone else.

12.     In the Fall 2020, Plaintiff was written up by Williams for "not fulfilling the duties and responsibilities of a Building Maintenance Supervisor as outlined in the Leon County Schools Job description for the position and for behaving in a

manner that was unprofessional during meetings with Administration and Leon County School staff." Plaintiff denies the allegations and states that he was completing his duties to the best of his abilities because his department was short staffed.

13.     In the Fall 2020, the Maintenance department was short staffed and ~~Maintenance/Secretary~~ custodian Angie l/n/u ("Angie"), a Caucasian female, was under the ambit of the Maintenance department. Also in the fall of 2020, Angie was temporarily placed on light duty, working in the front office. Angie working in the front office exacerbated Plaintiff's staffing issues and inherently made him responsible for more tasks. Plaintiff asked Decardenez what cleaning responsibilities Angie would be responsible for in the office. Decardenez told Plaintiff to "just worry about what you are responsible for- I will supervise Angie." Angie was Plaintiff's subordinate, but he was not permitted to supervise her. Angie remained in the office for over a year while still listed as a custodial employee, preventing Plaintiff from hiring additional help, including even temporary help.

14.     In the Spring 2020, Plaintiff, who had been performing the work of Angie and was still short staffed. Plaintiff even had to come in over the weekend to get all the additional work completed. Plaintiff properly recorded his time but was not paid for the overtime he worked and reflected on his time clock. Plaintiff reported

to Williams that he was not being paid for overtime which he had to work because the maintenance department was short staffed. Williams took no corrective action.

15.    In the Spring 2020, Williams and Decardenez called Plaintiff into a meeting. Williams said she had heard that Plaintiff had told co-workers she had stolen time from him for the hours of overtime he wasn't paid.

16.    Around this same time, Plaintiff's performance evaluations dropped from scores of 5 to scores of 1. Plaintiff was reprimanded by Williams and Decardenez and wrongfully demoted from Supervisor. Williams and Decardenez claimed Plaintiff was not meeting his responsibilities as a supervisor. Williams told Plaintiff she wanted to terminate him.

17.    Shortly thereafter, Plaintiff filed an internal grievance with Assistant Superintendent Deana McAllister about Williams discrimination, his nonpayment for hours worked and the hostile and disparate treatment. After the initial report, Plaintiff further reported to Deana McAllister about the retaliatory lower evaluation scores he received. No corrective action was taken for any of his reports.

18.    Thereafter, Principal Williams began and continued to ~~was~~ micromanaging Plaintiff and being overly critical of Plaintiff's work. By way of example Plaintiff as the supervisor was to focus on the yard perimeter, Williams gave him additional duties including, but not limited to, cleaning the front office, cleaning the library, two (2) new additional areas not previously under his work load.

Plaintiff was expected by Williams to do his yard and the two additional areas with no help. Plaintiff attempted to meet with McAllister to request a transfer, McAllister did not respond.

19.    During this same time period, the Spring 2020, the Covid Pandemic began. When the students' returned Plaintiff was written up by Williams for failing to properly complete a form for the daily chemicals. The process of cleaning the desks was new and each class had a sheet to mark the times of the cleaning(s). The rooms were being sprayed and cleaned several times each day. Plaintiff had accidentally missed a couple forms; he was the only person written up when others were also making the same mistakes. He was then suspended without pay for three days but was not provided with a reason for his suspension.

20.    Plaintiff and other staff began to suffer irritations from the chemicals being used and improper masks provided. Plaintiff worried about himself and his coworkers so he reported this issue separately to supervisor Carl Green and also to Williams and Decardenez, together, asking for a solution including better masks. No response was received from of the three (3).

21.    In the Summer 2020, Plaintiff noticed umbrellas in the storage room, so he suggested using the ~~table coverings that act like~~ umbrellas to block out the sun and make it look nicer. Williams agreed but never told him to place the umbrellas out, she just agreed it was a good idea. It was never a job duty of Plaintiff. Plaintiff

busy with his day to day work and still understaffed, ~~forgot to~~ did not put out the ~~table coverings~~ umbrellas and was written up by Williams. Williams also wrote Plaintiff up for not completing his jobs duties. However, Plaintiff was completing his job duties.

22.    In the Fall 2020, Plaintiff's workload was increased and became insurmountable. Plaintiff's department had a staffing shortage with only three custodians when six were needed.

23.    In Spring 2021, an employee, Lamatre Campbell, who Plaintiff formerly supervised, became Plaintiff's supervisor and began micromanaged Plaintiff.

24.    In the Summer 2021, Williams told Plaintiff he could no longer operate the lawn mower and mow the yard and tasked Campbell to mow the yard.

25.    On June 30, 2021, Plaintiff was wrongfully terminated. Plaintiff was not provided with the reason for his termination.

26.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services.  Defendant should be made to pay said fee under the laws referenced above.

**COUNT I**
**RACE DISCRIMINATION**

27.    Paragraphs 1 through 26 are realleged and incorporated herein by reference.

28.     This is an action against Defendant for discrimination based upon race brought under Chapter 760, Florida Statutes.

29.     Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that Plaintiff was treated differently than similarly situated employees of Defendants who are white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

30.     Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

31.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

32.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

33.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.  The events set forth herein lead, at least in part, to Plaintiff's termination on contrived allegations.

34.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of Chapter 760, Florida Statutes.

35.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits.  These damages have occurred in the past, are permanent and continuing.  Plaintiff is entitled to injunctive/equitable relief and punitive damages.

**COUNT II**
**RETALIATION – Chapter 760**

36.     Paragraphs 1 through 26 are realleged and incorporated herein by reference.

37.     Defendant is an employer as that term is used under the applicable statutes referenced above.

38.     The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting him under Chapter 760, Florida Statutes.

39.     The foregoing unlawful actions by Defendant were purposeful.

40.     Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and was the victim of retaliation thereafter, as related in part above.

41.     Plaintiff is a member of a protected class because he reported unlawful employment practices and was the victim of retaliation thereafter.  There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

42.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent.  Plaintiff is entitled to injunctive relief.

## COUNT III
## FLSA VIOLATIONS

43.     Paragraphs 1 through 26 above are incorporated herein by reference.

44.     This count sets forth a claim against Defendant for violation of the

Fair Labor Standards Act for refusing to pay Plaintiff overtime and his reports of

same.

45.     Plaintiff was due overtime and he objected to Defendant's refusal to

pay him overtime.  He was fired thereafter.

46.     The actions of all employees within Defendant who affected

Plaintiff's employment adversely did so at least in part in retaliation against him

for his reports of Defendant's failure to pay him overtime.

47.     As a direct and proximate result of the actions taken against him by

Defendant, Plaintiff has suffered injury, including but not limited to past and future

wage losses, loss of benefits, and other tangible damages.  These damages have

occurred in the past, are occurring at present and will occur in the future.  Plaintiff

is entitled to injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the

following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the

applicable counts set forth above, mandating Defendant's

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,


/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P. A.
203 North Gadsden Street
Tallahassee, FL 32303
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been

furnished to all counsel of record by CM/ECF this 1st day of May 2024.


/s/ Marie A. Mattox
Marie A. Mattox